I. F. McCANN et als. *vs.* INHABITANTS OF TOWN OF MINOT.

Androscoggin.    Opinion December 14, 1910.

*Taxation.    Personal Property.    "Landing Place."    "Landing."    Statute, 1845, chapter, 159, section 10; 1866-68, chapter 105; 1869, chapter 53; 1909, chapter 4.    Revised Statutes, 1883, chapter 6, section 14; 1903, chapter 9, sections 1, 12, 13, 22.*

The plaintiffs, copartners, having paid, under protest, a tax assessed to them by the assessors of the defendant town, upon lumber, bring this suit to recover it back.   Logs had been hauled by the plaintiffs from other towns into Minot and had there been sawed.   The lumber was then " stuck up " in a field in Minot for seasoning.   It was intended for sale and it was intended to remain there until sold.   Remaining there on the ensuing April 1, it was assessed.   None of the plaintiffs resided in Minot.

To sustain the assessment, under Revised Statutes, chapter 9, section 22, it must appear :

1.  That the plaintiffs were, at the time of the assessment, carrying on business in the town of Minot, and that the property assessed was employed in that business, or

2.  If their place of business was in some other town than Minot, that the property so employed was placed, deposited or situated in Minot; also, in either case,

3.  That the property assessed was employed in trade, in the erection of buildings or vessels, or in the mechanic arts; and

4.  In case the place of business was in some other town than that in which the property was deposited, that the plaintiffs, their servants, sub-contractors or agents, so employing the property, occupied, for the purpose of the employment, a store, shop, mill, wharf, landing place, or shipyard in Minot.

5.  The case fails to show that the plaintiffs, at the time of the assessment, were carrying on business in Minot, within the meaning of the statute, or if the property assessed was employed in trade in Minot, that the plaintiffs occupied, for the purposes of such employment, a store, shop, mill, wharf, landing place, or shipyard in Minot.

6.  A field, where lumber is "stuck up" for seasoning, there to remain until sold, and then to be hauled to a railroad for transportation, is not a "landing place" within the meaning of the statute.

On exceptions by plaintiffs.      Sustained.

Action for money had and received to recover back the sum of $40.60 paid under protest to the tax collector of the defendant town for a nonresident tax assessed upon the personal property of the plaintiffs for the year 1909. Plea, the general issue. Heard by the presiding Justice, without a jury, who ordered judgment for the defendant town, and the plaintiffs excepted.

The case is stated in the opinion.

NOTE. Revised Statutes, chapter 9, section 13, paragraph I, as amended by chapter 4, Public Laws, 1909, was further amended by chapter 140, Public Laws, 1911, so that said paragraph I now reads as follows:

"All personal property employed in trade, in the erection of buildings or vessels, or in the mechanic arts, shall be taxed in the town where so employed on the first day of each April; provided, that the owner, his servant, sub-contractor or agent, so employing it, occupies any store, storehouse, shop, mill, wharf, landing place or ship yard therein for the purpose of such employment. All portable mills, logs, at or in the same town as said portable mills,

to be manufactured at said portable mills, and the lumber manufactured by said portable mills, shall be taxed in the town where said portable mills, logs, and lumber are, on the first day of April each year."

*F. O. Purington, George C. Wing, and George C. Wing, Jr.,* for plaintiffs.

*John A. Morrill,* for defendants.

SITTING : EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH, BIRD, JJ.

SAVAGE, J.   Two of the plaintiffs reside in Mechanic Falls and one in Casco, in this State.   On April 1, 1909, they owned a certain quantity of pine and hemlock boards and plank which were "stuck up" in a field hired by them for that purpose, within the limits of the defendant town, Minot.   The assessors of Minot assessed the lumber to the plaintiffs.   The tax was subsequently paid under protest, and this suit has been brought to recover it back.   The case was heard below by the presiding Justice, without a jury.   He ordered judgment for the defendant, and the plaintiffs excepted.   The only question is whether the lumber was legally taxable in Minot, under the circumstances of the case.

The facts which are undisputed are these : — The plaintiffs, as copartners, carried on a lumbering operation in the winter of 1908-9.   The logs were all cut outside of Minot, in Hebron, Oxford and Mechanic Falls, on lands, or from stumpage, owned by them. For convenience of operation, they were all hauled into Minot, in one place, and there sawed by a portable saw-mill.   The lumber was then "stuck up" to season in the field above mentioned.   It was intended for sale, and it was intended that it should remain there until sold.   When sold it was to be hauled to a railroad siding, half a mile distant, also in Minot, for shipment.   All the work "from the tree to the car" was done under contract by another party. The plaintiffs, however, supervised the work so far as to determine from time to time the size and shape of the manufactured product.

The plaintiffs had no office anywhere. Their books were kept by one of the firm at his dwelling house in Mechanic Falls, and there he carried on the correspondence of the firm. But it is in evidence that prospective purchasers were taken by them to the sticking grounds to examine the lumber.

After the assessment of the tax complained of, the pine lumber was sold in a lot to be delivered on the cars at the siding, as ordered out by the purchaser. The sale was made by correspondence, but the purchaser, unaccompanied by the plaintiffs, had visited the sticking ground and examined the stock. He had previously been there while the lumber was being sawed, and when one of the plaintiffs was present. The hemlock lumber was sold to the town of Mechanic Falls, the contract of sale being made at Mechanic Falls.

A similar operation had been carried by the plaintiffs the previous year at the same place, and a tax had been assessed to them in 1908, on lumber then "stuck up" as the lumber in question was. This tax the plaintiffs paid, supposing it to have been properly assessed. In 1909 the same lumber, on which the disputed assessment was made, was taxed to the plaintiffs in Mechanic Falls.

The validity of the assessment depends upon the construction properly to be given to section 22, chapter 9, of the Revised Statutes, taken in connection with paragraph I of section 13 of the same chapter. Both of these sections relate to exceptions from, or modifications of, the general rule of taxation prescribed by section 12, which is that "all personal property within or without the state, . . . . shall be assessed to the owner in the town where he is an inhabitant on the first day of each April."

Section 22 provides that "partners in business, whether residing in the same or different towns, may be jointly taxed, under their partnership name, in the town where their business is carried on, for all personal property enumerated in paragraph one of section thirteen, employed in such business; . . . . except that if any portion of such property is placed, deposited or situated in a town other than where their place of business is, under the circumstances specified in said paragraph, they shall be taxed therefor in

such other town." And the paragraph one of section thirteen, thus referred to, reads as follows : "All personal property employed in trade, in the erection of buildings and vessels, or in the mechanic arts, shall be taxed in the town where so employed on the first day of each April ; *provided* that the owner, his servant, sub-contractor or agent, so employing it, occupies any store, shop, mill, wharf, landing place or shipyard therein for the purpose of such employment."

To sustain the assessment in this case under these statutes it must appear,

1.    That the plaintiffs were, at the time of the assessment, carrying on business in the town of Minot and that the property assessed was employed in that business, or

2.    If their place of business was in some other town than Minot, that the property so employed was placed, deposited or situated in Minot ; also, in either case,

3.    That the property assessed was employed in trade, in the erection of buildings or vessels, or in the mechanic arts ; and

4.    In case the place of business was in some other town than that in which the property was deposited, that the plaintiffs, their servants, sub-contractors or agents, so employing the property, occupied, for the purpose of the employment, a store, shop, mill, wharf, landing place, or shipyard in Minot.

It will be noticed that under the first alternative in section 22, "all personal property enumerated in paragraph one of section thirteen, employed in the business" is to be taxed, and this without reference to the conditions of occupation, while under the second alternative only such property is to be taxed as is deposited "under the circumstances specified in said paragraph" which phrase relates to the conditions of occupancy.

The contention of the defendant is, first, that the plaintiffs either were carrying on the business of manufacturing and selling lumber in Minot, and that the lumber taxed was employed in that business, or, in the alternative, if they were not carrying on business there, that the lumber being so employed in a business carried on elsewhere was placed, deposited or situated in Minot ; secondly, that it was

employed in trade in Minot; and lastly, that the plaintiffs occupied a "landing place" in Minot for the purpose of such employment. The other statutory limitations need not be considered.

We think the evidence, as to the place of carrying on the business, brings the case within the second of the foregoing alternatives, that is to say, that at the time of the assessment the business of the firm was being carried on in another town.

As to the second proposition, that the lumber was employed in trade in Minot, it is not easy to distinguish this case from *New Limerick* v. *Watson*, 98 Maine, 379. In that case starch had been manufactured in a town other than that in which the owner was an inhabitant, and was stored in the town where manufactured until after the first day of the following April, awaiting shipment by rail out of that town as the same should be sold, no sales being made or intended to be made in that town, and all of the sales and correspondence in relation to sales being made in the town where the owner lived and conducted his business; and it was held that the starch was not employed in trade in the town where stored, within the meaning of the statute above referred to, for the purposes of taxation. Except that these plaintiffs took prospective customers to the sticking ground to inspect the lumber, there seems to be no real distinction between that case and this one. However, we do not find it necessary to decide this question, for it is not shown that the plaintiffs occupied a "landing place" in Minot.

The plaintiffs occupied a "sticking ground," and we do not think that by any fair interpretation of the statute a sticking ground can be called a "landing place."

What is now section 22 was originally enacted in a somewhat different form in the Public Laws of 1845, chap. 159, sect. 10. In that statute the place of occupancy requisite to the lawful assessment of a tax to non-residents in such cases was specified as a "store, shop, mill or wharf therein." By chapter 105 of the Public Laws of 1867 the word "ship yard" was added. And in the amendment by chapter 53 of the Public Laws of 1869 the word "landing" first appears. In the general revision of 1883 the phrase "landing place" was substituted for "landing." R. S., 1883,

ch. 6, sect. 14. But the sense was not changed thereby. No other change was made in the statute in this respect until 1909, when the word "storehouse" was added. Public Laws of 1909, chap. 4.

At the time the term "landing" was first incorporated into the statute, it had two well known significations. It meant a place on a river or other navigable water for lading and unlading goods, or for taking on or letting off passengers. See cases in 5 Words and Phrases, page 3988. "The place where any kind of a craft lands." It also meant "a place for storing logs for the winter." Standard Dictionary. Both of these kinds of places are within the meaning of the statutory term "landing" or "landing place." The word landing is also used to designate the top of a stair case, and the platform of a railway station, etc., Standard Dictionary. But these uses are clearly not within the statute.

The defendant contends that the word "landing" has come to mean a place where lumber is collected preparatory for transportation by water or rail, but the dictionary definitions to which counsel refers do not sustain the contention. As for instance, in the Century Dictionary the definition is, "A place where logs are stored till spring;" or in the Century Supplement, "A place to which logs are hauled or skidded preparatory to transportation by water or rail." The latter definition is more accurate than the former. But in both it is a place for depositing logs, not manufactured lumber.

But it is not necessary in this case to say that a place where even manufactured lumber is *landed* preparatory to transportation, as upon the bank of a stream or beside a railroad, is not a landing place, within the statute, for that is not this case. A landing place is a place where logs, (and it may be other things) are collected and deposited for transportation or shipment from that place, whether it be by water or rail. But in this case the lumber was "stuck up" for seasoning on ground some distance from the railroad. It was not at the "landing place," if so it may be called. After it was sold it still remained to haul it to the "landing place."

The practice of manufacturing lumber by means of portable saw-mills, and the consequent practice of "sticking up" the lumber in

400 MCCANN *v.* MINOT. [107

fields and pastures, near the mills, was not prevalent, if it existed at all, when the word "landing" was first used in the statute. And we are urged by the defendant to apply the principle of the extension of the language of a statute to new conditions which did not exist and could not have been contemplated by the legislature when it was passed. This may be done "when the act deals with a genus and the thing which afterwards comes into existence is a species of it." *Hurly* v. *So. Thomaston*, 105 Maine, at page 306. But assuming that the term "landing" is a genus, we do not think that a sticking place or lumber yard is a species of it.

If the legislature deems it wise that lumber situated as this was should be taxable in the town where it is deposited, rather than in the town of the owner's residence, it will make the necessary amendment, as it has heretofore done in the cases of "ship yards," "landings," and "store houses." The court would transcend proper judicial limitations if it attempted to do so.

*Exceptions sustained.*